IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

DAVID A. MOCK, II,

    Petitioner,                                CASE NO. 2:11-CV-1156
                                               JUDGE WATSON
    v.                                        MAGISTRATE JUDGE KING

TIM BRUNSMAN, WARDEN,

    Respondent.

### REPORT AND RECOMMENDATION

Petitioner, a state prisoner, brings this action for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the Court on the *Petition*, Doc. No. 2, Respondent's *Return of Writ*, Doc. No. 6, Petitioner's *Traverse,* Doc. No. 12, and the exhibits of the parties. For the reasons that follow, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED**.

### FACTS and PROCEDURAL HISTORY

The Ohio Tenth District Court of Appeals summarized the facts and procedural history of this case as follows:

> On November 29, 2006, two bullets struck and killed Robert Hunter inside his home at 667 East Woodrow Avenue. Columbus Police Officer James Jude heard the two shots in the vicinity of the Lincoln Park apartments and then observed two males running from Hunter's house. Officer Jude was unable to locate the two individuals that night, but he responded to the home to find the victim unresponsive on his couch. During a search in the vicinity of the crime scene, police recovered a 9-millimeter magazine clip in an alley near the Lincoln Park apartments. In April of 2008, police arrested Mock, and Jennings turned himself into police the next day. The state indicted defendants on one count each of aggravated murder, aggravated robbery, and aggravated burglary, each with a firearm specification. The state tried defendants jointly.
>
> During *voir dire*, Jennings twice objected on racial discrimination

grounds to the prosecution's use of peremptory challenges. The first objection arose when the prosecution excused an African-American potential juror; the second came when the prosecution used a peremptory challenge on an African-American potential alternate juror. In both objections, the prosecution provided explanations for the peremptory challenges; the trial court accepted them as racially neutral and overruled Jennings' objections.

At the trial commencing December 4, 2008, the parties stipulated the two spent shell casings found on Hunter's front porch and the bullet fragment retrieved from Hunter's body came from a 9-millimeter gun. The criminalist who examined the evidence for the prosecution could neither identify nor eliminate the casings as having come from the magazine clip recovered near the crime scene. Crime scene investigators also recovered from Hunter's house significant amounts of marijuana and cocaine, a .32 Derringer handgun on the floor underneath Hunter's hand, and a .357 Magnum revolver underneath one of the couch's cushions. Fingerprints lifted from the scene did not match those of Hunter, Jennings or Mock.

Kenya Nettles, who lived in the Lincoln Park apartments across from Hunter's house, testified she saw three men the night of Hunter's murder and confronted them because she thought they were trying to break into her apartment. About five minutes later, she heard two gunshots. Nettles then saw one man running north through an alley and two others running through a courtyard. Nettles did not recognize a photograph of Mock police showed her before trial, but she identified Jennings in court as one of the men she saw the night of Hunter's murder.

Victor Brown ("Victor"), a witness for the prosecution, was in prison on a parole violation in January 2007. While in prison, Victor saw a news story about Hunter's murder in a Crime Stoppers segment. Afraid that he might be implicated in the crime, Victor arranged to meet with police in April 2007. At trial, Victor admitted to lying in his first two conversations with detectives in an effort to protect Jennings, his cousin. Victor testified that in his third and final interview with police he nonetheless told police what actually happened the night of Hunter's murder. Before providing his final statement to police, Victor signed a *Miranda* waiver even though Detective Althea Young told Victor she could not guarantee he would not be charged with a crime. The state never charged Victor with any

crime related to Hunter's murder.

Testifying at trial to what he told Detective Young, Victor stated that Jennings, who also goes by "Little Kev," called him several times in November 2006 seeking Victor's assistance to plan and carry out a "lick" or a robbery. (Tr. 44.) According to Victor, Jennings said he planned to steal marijuana by simply walking into a known drug dealer's house and taking it. Victor later learned Hunter was a very heavy man and left his door open at night because he was unable to move around and let people in his house. Victor testified that, after he met with Jennings, he thought the plan was ill-advised because "there's a police station, like a precinct right down the street from the house." (Tr. 48.) Victor also said he warned Jennings that Hunter might have a gun inside his house because "what drug dealer dude don't got a gun?" (Tr. 50.)

Victor testified a man with the street name "Face" eventually joined Victor and Jennings. In court, Victor identified Mock as the man he knew as "Face." According to Victor, Mock was the one who said they were going to go through with the lick because they were already at Hunter's house. Both Mock and Jennings revealed to Victor that they had guns with them, but Jennings said his gun was not loaded. Mock's weapon, according to Victor's testimony, was a black 9-millimeter. Victor testified that, after seeing their weapons, he withdrew from the situation and began to walk away. When he heard a gunshot, he turned around to see Jennings on the steps leading to the porch and Mock on the porch firing shots. Victor then fled from the house toward an alley, and defendants ran in a different direction. Victor did not know Hunter died until Jennings saw the death reported on the news and told Victor the next day.

The prosecution also called Cawthon Brown ("Cawthon"), who is not related to Victor, as a witness. Cawthon testified he was "acquaintances" with both defendants in the summer of 2007. (Tr. 296, 300.) One day when they were smoking marijuana together, Cawthon said Mock confessed to him that Mock shot "the big guy" when defendants attempted a lick on Woodrow Avenue. (Tr. 296-98.) According to Cawthon, Mock said he "had to dump shells in the dude" because the man fired at them first. (Tr. 296-98, 313.) Cawthon further testified Mock said he was "mad" at Jennings because Jennings ran following the shooting. (Tr. 297, 302 .) Cawthon stated

3

at trial that, when he asked Jennings why Mock was mad at Jennings, Jennings' only response was that something had happened but "he didn't want to talk about it." (Tr. 302.)

In September 2007, Cawthon was in jail awaiting a community control revocation hearing when he contacted police to share what defendants told him. At the time, Cawthon knew defendants only by their street names, but he told Detective Young he had taken "Face" to obtain his driver's license that month. (Tr. 408-09.) In November 2007, Cawthon identified Mock from a photo array, and Cawthon later identified Jennings from a different photo array. At some point while he was still in jail, Cawthon asked detectives the proper procedures for claiming the Crime Stoppers reward money, but he never attempted to collect it.

Detective Young testified that her investigation, including the interviews with Victor and Cawthon, led to Mock's arrest in April 2008. After his arrest, Mock admitted his nickname is "Face-Off" or "Face," but he denied any involvement in Hunter's murder. (Tr. 412.) Jennings turned himself into authorities the day after Mock's arrest. The prosecution rested after Detective Young's testimony. Neither defendant called any witnesses.

Following deliberations, the jury found both defendants guilty of murder, aggravated robbery and firearm specifications. The trial court sentenced Jennings to 15 years to life in prison, plus one mandatory year for the firearm specification; it sentenced Mock to 15 years to life in prison, plus three mandatory years for the firearm specification. The court journalized its corrected final judgment entries for each defendant on January 12, 2009.

*State v. Jennings,* Nos. 09AP-70, 09AP-75, 2009 WL 5062117, at *1-3 (Ohio App. 10th Dist. Dec. 24, 2009). Petitioner raised the following assignments of error in his timely direct appeal:

> [I.] THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT BY OVERRULING HIS OBJECTIONS TO THE STATE'S USE OF ITS PEREMPTORY CHALLENGES TO EXCLUDE RACIAL MINORITIES BY EXCUSING TWO AFRICAN-AMERICAN MEMBERS OF THE VENIRE PANEL, INCLUDING ONE MEMBER ALLEGEDLY BECAUSE OF HER

4

RELIGIOUS AFFILIATION, AND NOT FOLLOWING THE PROCEDURE SET FORTH IN *BATSON v. KENTUCKY* IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTION 10, ARTICLE I OF THE OHIO CONSTITUTION.

[II.] THE VERDICT IS AGAINST THE SUFFICIENCY AND MANIFEST WEIGHT OF THE EVIDENCE.

[III.] THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION WHEN IT OMITTED THE APPELLANT'S REQUESTED ACCOMPLICE INSTRUCTION FROM THE JURY CHARGE THEREBY VIOLATING THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT TO THE U.S. CONSTITUTION AND ARTICLE I, SECTIONS 1 AND 16 OF THE OHIO CONSTITUTION.

[IV.] THE TRIAL COURT VIOLATED APPELLANT[']S RIGHTS UNDER THE FEDERAL AND STATE CONFRONTATION CLAUSES BY ADMITTING OUT OF COURT STATEMENTS INCULPATING ONE DEFENDANT MADE BY A CO-DEFENDANT, WHO WAS NOT SUBJECT TO CROSS EXAMINATION BECAUSE HE DID NOT TESTIFY AT TRIAL.

*State v. Jennings*, 2009 WL 5062117 at *4-5. On December 24, 2009, the appellate court affirmed the trial court's judgment. *Id.* On May 5, 2010, the Ohio Supreme Court dismissed Petitioner's subsequent appeal. *State v. Jennings*, 125 Ohio St.3d 1416 (2010).

On April 21, 2010, Petitioner filed an application to reopen his appeal pursuant to Ohio Appellate Rule 26(B). He asserted he had been denied the effective assistance of appellate counsel because his attorney failed to raise on appeal a claim of prosecutorial misconduct. *Exhibit 13 to Return of Writ.* On December 14, 2010, the appellate court denied Petitioner's Rule 26(B)

5

application. *Exhibit 15 to Return of Writ*.[1]  On March 16, 20111, the Ohio Supreme Court dismissed Petitioner's subsequent appeal. *Exhibit 19 to Return of Writ*.

On December 29, 2011, Petitioner filed this action pursuant to 28 U.S.C. § 2254 raising the following single ground for relief:

> Appellant was denied his constitutional rights to a fair trial and due process of law by prosecutorial misconduct. The prosecutor bolstered the false and perjured testimony of Victor Brown to gain a conviction against me, David Mock.

## PROCEDURAL DEFAULT

In the *Return of Writ*, Respondent takes the position that Petitioner's claim has been exhausted and is not barred by procedural default. *Return of Writ*, pp. 11-14. However, that position is apparently based on a conflation of the claim actually raised before this Court in the *Petition* – *i.e.,* a claim of prosecutorial misconduct – and the claim raised by Petitioner in his Rule 26(B) application – *i.e.*, a claim that his appellate counsel was ineffective for failing to raise the prosecutorial misconduct claim on direct appeal. Although these claims are certainly related, they are not identical. Moreover, although the claim of ineffective assistance of appellate counsel was addressed by the state courts, the prosecutorial midsconduct claim actually asserted by Petitioner before this Court has never been presented to the state courts. Because that claim was readily apparent from the face of the trial court's record, the claim should have been raised on direct appeal. It was not, and Ohio's doctrine of *res judicata* now precludes the presentation of that claim to the state courts. *See State v. Cole*, 2 Ohio St. 3d 112 (1982); *State v. Ishmail*, 67 Ohio St. 2d 16 (1981); *State v. Perry*, 10 Ohio St. 2d 175 (`1967).

---

[1] The appellate court also denied Petitioner's motion for relief from judgment. *Exhibit 21 to Return of Writ.*

Although federal courts are not required to raise procedural default *sua sponte*, *Trest v. Cain,* 522 U.S. 87, 89 (1997), neither are they precluded from doing so. *Howard v. Bouchard,* 405 F.3d 459, 476 (6th Cir. 2005)(citing *Lorraine v. Coyle,* 291 F.3d 416, 426 (6th Cir. 2002)); *Elzy v. United States*, 205 F.3d 882, 886 (6th Cir. 2000). This is particularly true where, as here, Petitioner will have the opportunity to respond to the Court's procedural default analysis in any objections to this *Report and Recommendation*. The Court will therefore consider whether Petitioner has waived this Court's consideration of the merits of his claim of prosecutorial misconduct.

In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state criminal defendant with federal constitutional claims is required fairly to present those claims to the highest court of the state for consideration. 28 U.S.C. § 2254(b), (c). If he fails to do so, but still has an avenue open to him by which he may present the claims, his petition is subject to dismissal for failure to exhaust state remedies. *Id.; Anderson v. Harless,* 459 U.S. 4, 6 (1982) ( *per curiam* ); *Picard v. Connor,* 404 U.S. 270, 275–76 (1971). If, because of a procedural default, the petitioner can no longer present his claims to a state court, he has also waived them for purposes of federal habeas review unless he can demonstrate cause for the procedural default and actual prejudice resulting from the alleged constitutional error. *Murray v. Carrier,* 477 U.S. 478, 485 (1986); *Engle v. Isaac,* 456 U.S. 107 (1982); *Wainwright v. Sykes,* 433 U.S. 72, 87 (1977).

In the Sixth Circuit, a four-part analysis must be undertaken when the state argues that a federal habeas claim is precluded by the petitioner's failure to observe a state procedural rule. *Maupin v. Smith,* 785 F.2d 135, 138 (6th Cir.1986). "First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to

comply with the rule." *Id.* Second, the court must determine whether the state courts actually enforced the state procedural sanction. *Id.* Third, it must be decided whether the state procedural forfeiture is an adequate and independent state ground on which the state can rely to foreclose review of a federal constitutional claim. *Id.* Finally, if the court has determined that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner is required to demonstrate that there was cause for him not to follow the procedural rule and that he was actually prejudiced by the alleged constitutional error. *Id.* This "cause and prejudice" analysis also applies to failure to raise or preserve issues for review at the appellate level. *Leroy v. Marshall,* 757 F.2d 94 (6th Cir.1985).

As noted *supra*, Ohio's doctrine of *res judicata* now forecloses the possibility of presenting Petitioner's claim of prosecutorial misconduct to the state courts. Thus, the state courts were never given an opportunity to enforce the procedural rule that requires that claims appearing on the face of the trial court's record be presented on direct appeal. Ohio's *res judicata* rule is adequate and independent under the *Maupin* test. To be "independent," the procedural rule at issue, as well as the state court's reliance thereon, must rely in no part on federal law. *See Coleman v. Thompson,* 501 U.S. 722, 732–33 (1991). To be "adequate," the state procedural rule must be firmly established and regularly followed by the state courts. *Ford v. Georgia,* 498 U.S. 411 (1991). "[O]nly a 'firmly established and regularly followed state practice' may be interposed by a State to prevent subsequent review by this Court of a federal constitutional claim." *Id.* at 423 (quoting *James v. Kentucky,* 466 U.S. 341, 348–351 (1984)); *see also Barr v. City of Columbia,* 378 U.S. 146, 149 (1964); *NAACP v. Alabama ex rel. Flowers,* 377 U.S. 288, 297 (1964); *see also Jamison v. Collins,* 100 F.Supp.2d 521, 561 (S.D. Ohio 1998).

The Sixth Circuit has consistently held that Ohio's doctrine of *res judicata, i.e.,* the *Perry* rule, is an adequate ground for denying federal habeas relief. *Lundgren v. Mitchell,* 440 F.3d 754, 765 (6th Cir. 2006); *Coleman v. Mitchell,* 268 F.3d 417, 427–29 (6th Cir. 2001); *Seymour v. Walker,* 224 F.3d 542, 555 (6th Cir. 2000); *Byrd v. Collins,* 209 F.3d 486, 521–22 (6th Cir. 2000); *Norris v. Schotten,* 146 F.3d 314, 332 (6th Cir. 1998). Ohio courts have consistently refused, in reliance on the doctrine of *res judicata,* to review the merits of claims because they are procedurally barred. *See State v. Cole,* 2 Ohio St.3d at 112; *State v. Ishmail,* 67 Ohio St.2d at 16. Additionally, the doctrine of *res judicata* serves the state's interest in finality and in ensuring that claims are adjudicated at the earliest possible opportunity. With respect to the independence prong, the Court concludes that *res judicata* does not rely on or otherwise implicate federal law. Accordingly, the *Perry* rule is an adequate and independent ground for denying relief.

Petitioner may still obtain review of this claim on the merits if he establishes cause for his procedural default, as well as actual prejudice from the alleged constitutional violation.

> " '[C]ause' under the cause and prejudice test must be something external to the petitioner, something that cannot fairly be attributed to him[;] ... some objective factor external to the defense [that] impeded ... efforts to comply with the State's procedural rule." *Coleman v. Thompson,* 501 U.S. 722, 753, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991).

*Maples v. Stegall*, 340 F.3d 433, 438 (6th Cir.2003). As the procedural history of this case demonstrates, Petitioner would, presumably, argue that his procedural default of his claim of prosecutorial misconduct should be excused because it was caused by his attorney's failure to raise it on direct appeal.

The constitutionally ineffective assistance of counsel may constitute cause for a procedural

9

default, so long as that claim has been presented to the state courts and is not, itself, procedurally defaulted. *Edwards v. Carpenter,* 529 U.S. 446, 452-53 (2000) (citing *Murray v. Carrier,* 477 U.S. 478, 488–89 (1986)). Such are the circumstances here. The Court will therefore consider whether petitioner was denied the effective assistance of counsel when his appellate counsel failed to raise the claim of prosecutorial misconduct on direct appeal.

## INEFFECTIVE ASSISTANCE OF COUNSEL

The state appellate court rejected Petitioner's claim of ineffective assistance of counsel in relevant part as follows:

> [D]efendant alleges his appellate counsel was ineffective for choosing not to raise an assignment of error based on prosecutorial misconduct[.] **. . .**
>
> Defendant argues that the prosecution purposefully and knowingly presented false testimony by maintaining that the state's witness, Victor Brown, received no consideration in exchange for his testimony. According to defendant, the fact Brown was "never charged with a single criminal offense for his admitted involvement in the attempted robbery and ultimate murder of Mr. Robert Hunter**,** clearly indicates a 'quid-pro-quo' between himself and the State of Ohio."
>
> **"**The knowing use of false or perjured testimony constitutes a denial of due process if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *State v. Iacona,* 93 Ohio St.3d 83. . . quoting *United States v. Lochmondy* (C.A.6, 1989), 890 F.2d 817, 822. **"**Such a claim is in the nature of an allegation of prosecutorial misconduct, and the burden is on the defendant to show that'(1) the statement was actually false; (2) the statement was material; and (3) the prosecution knew it was false.'" *Id*., quoting *Lochmondy, supra*. While defendant appears to argue Brown cut a deal with the state of Ohio, defendant did not present any evidence to support his argument.

> Defendant's argument focuses on his belief the state should have charged Brown as an accomplice in the shooting death of Hunter, and the state's failure to do so was consideration for Brown's testimony inculpating defendant. Brown, however, testified that he did not receive any consideration from the state in exchange for his testimony; similarly "Detective Young testified [Brown] received no guarantee that [Brown] would not be charged with a crime." *Mock* at ¶ 68. Thus, the state could have charged Brown at any time as an accomplice. The record thus fails to support defendant's contentions that the state gave Brown consideration in exchange for his testimony and lied to the jury on this issue. The state's not charging Brown as an accomplice is more likely due to the fact that Brown sufficiently abandoned the robbery plot rather than that he testified against defendant. R.C. 2923.03(E); *Mock* at ¶ 133 (Tyack, J., concurring)(noting Brown "abandoned the whole project by walking or running away when it became clear that Jennings and Mock were going forward with the robbery attempt anyway").
>
> \*\*\*
>
> Defendant has not established a genuine issue as to whether he was deprived of effective assistance of counsel under the *Strickland* test. Accordingly, we deny defendant's application to reopen.

*Exhibit 15 to Return of Writ*.

The factual findings of the state appellate court are presumed to be correct.

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1). Further, a federal habeas court may not grant relief unless the state court's decision was contrary to or an unreasonable application of clearly established federal law, or based on an unreasonable determination of the facts in light of the evidence that was presented.

An application for a writ of habeas corpus on behalf of a person in

> custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "The focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable[;] an unreasonable application is different from an incorrect one." *Bell v. Cone,* 535 U.S. 685, 694 (2002). To obtain habeas corpus relief, Petitioner must show the state court's decision was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Bobby v. Dixon,* ––– U.S. ––– , 132 S.Ct. 26 (2011) (quoting *Harrington v. Richter,* 562 U.S. ––––, ––––, 131 S.Ct. 770, 786–87 (2011). Petitioner has failed to meet this standard here.

The right to counsel guaranteed by the Sixth Amendment is the right to the effective assistance of counsel. *McMann v. Richardson,* 397 U.S. 759, 771 n. 14 (1970). The standard for reviewing a claim of ineffective assistance of counsel is twofold:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Washington,* 466 U.S. 668, 687 (1984). "Because of the difficulties inherent in making

the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689.

To establish prejudice, it must be shown that there is a reasonable probability that, but for counsel's errors, the result of the proceedings would have been different. *Id*. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 697. Because a petitioner must satisfy both prongs of the *Strickland* test to demonstrate the ineffective assistance of counsel, if the court determines that the petitioner has failed to satisfy one prong, it need not consider the other. *Id. * at 697.

The *Strickland* test applies to appellate counsel. *Burger v. Kemp,* 483 U.S. 776 (1987). Counsel must provide reasonable professional judgment in presenting the appeal. *Evitts v. Lucey,* 469 U.S. 387, 396-97 (1985). " '[W]innowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray,* 477 U.S. 527, 536 (1986) (*quoting Jones v. Barnes*, 463 U.S. 745, 751-52 (1983)). Of course, not every decision made by appellate counsel can be insulated from review merely by categorizing it as strategic. The United States Court of Appeals for the Sixth Circuit has identified the following considerations that ought to be taken into account in determining whether counsel on direct appeal performed reasonably competently:

> A. Were the omitted issues "significant and obvious?"
> B. Was there arguably contrary authority on the omitted issues?
> C. Were the omitted issues clearly stronger than those presented?
> D. Were the omitted issues objected to at trial?
> E. Were the trial court's rulings subject to deference on appeal?

> F. Did appellate counsel testify in a collateral proceeding as to his appeal strategy and, if so, were the justifications reasonable?
> G. What was appellate counsel's level of experience and expertise?
> H. Did the petitioner and appellate counsel meet and go over possible issues?
> I. Is there evidence that counsel reviewed all the facts?
> J. Were the omitted issues dealt with in other assignments of error?
> K. Was the decision to omit an issue an unreasonable one which only an incompetent attorney would adopt?

*Mapes v. Coyle,* 171 F.3d 408, 427-28 (6th Cir.1999).

"The knowing use of false or perjured testimony constitutes a denial of due process if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *United States v. Lochmondy,* 890 F.2d 817, 822 (6th Cir. 1989). In order to warrant relief on the basis of false testimony, the statement must have been both false and material, and the prosecutor must have known that the statement was false. *United States v. Maga*, No. 10-4008, 2012 WL 1109472, at *8 (6th Cir. April 4, 2012)(citing *United States v. Farley,* 2 F.3d 645, 655 (6th Cir.1993)). It is the convicted party's burden to show that the testimony was actually false. "[M]ere inconsistencies in testimony by government witnesses do not establish knowing use of false testimony." *Lochmondy*, 890 F.2d at 822.

Petitioner argues that the prosecutor knowingly presented the perjured testimony of Victor Brown, "knowing that Brown had given numerous statements in an attempt to minimize his role in the crime." *See Traverse*. According to Petitioner, Brown's statements were false because Brown admitted at trial that his initial statement to police was "all lies" and because Brown did not identify Petitioner until the day of trial. *Id.* Petitioner also complains that the prosecutor should have corrected Brown's testimony that he had abandoned the crime, in light of Brown's directive to an

14

unidentified person to gather the guns and get rid of them. *Id*. at 4.

The claim presented by Petitioner to the state courts – and therefore the only claim before this Court – related only to Brown's alleged agreement with the government in exchange for his testimony. However, and as the state courts found, there is no evidence of any such agreement. Petitioner has therefore failed to establish the ineffective assistance of counsel based on his attorney's failure to raise this claim on appeal. Having failed to establish the ineffective asistance of his counsel, Petitioner has likewise failed to establish cause for the procedural default of his claim of prosecutorial misconduct.

Beyond the four-part *Maupin* analysis, a habeas court is required to consider whether this is "an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier,* 477 U.S. at 491; *see also Sawyer v. Whitley,* 505 U.S. 333 (1992). This is not such a case.

It is therefore **RECOMMENDED** that this action be **DISMISSED** on the basis of procedural default.

## PROCEDURE ON OBJECTIONS

If any party objects to this *Report and Recommendation,* that party may, within fourteen (14) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit

this matter to the magistrate judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo,* and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir.1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

 *s/ Norah McCann King*  
Norah McCann King  
United States Magistrate Judge

September 17, 2012